```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Kader Yahawi,                    :      CIVIL ACTION
                                 :      NO. 19-1952
            Plaintiff,           :
                                 :
     v.                          :
                                 :
Boilermaker-Blacksmith           :
National Pension Trust,          :
                                 :
            Defendant.           :
```

EDUARDO C. ROBRENO, J.                              July 29, 2020

## I.    Introduction

Kader Yahawi seeks a greater amount of benefits and an
earlier benefits starting date than he was awarded under the
Boilermaker-Blacksmith National Pension Trust Plan ("the Plan").
He claims that by incorrectly determining his benefits starting
date and the amount of his benefits, and by not extending his
health care benefits, the Boilermaker-Blacksmith National
Pension Trust ("the Trust") violated the Employee Retirement
Income Security Act of 1974 ("ERISA"), 29 U.S.C.
§ 1132(a)(1)(B). Before the Court is the Trust's motion for
summary judgment. The motion will be granted as to all claims.

## II.   Background

Yahawi is a member of the Boilermaker Union, for which the
Trust administers the Plan, which is an ERISA-covered pension
plan. In November 2015 he suffered a heart attack and became
completely disabled. Six months later, he lost his private

health insurance coverage due to his inability to pay the premium.

Before Yahawi submitted a disability pension application, the Trust approved an amendment to the Plan. This amendment reduced the amount of the disability pension benefit for disability pensions with an Annuity Starting Date[1] on or after October 1, 2017. The Annuity Starting Date is either (1) the first day of the first month following the month in which the application was filed if the application is filed before the fifteenth of the month, or (2) the first day of the second month following the month in which the application was filed if the application is filed after the fifteenth of the month.

Under the Plan, both as amended and pre-amendment, an individual applying for a disability pension must provide a Disability Notice of Award from the Social Security Administration ("Disability Notice"). The Disability Notice must be submitted to the Trust within 180 days of the submission of a disability pension application, otherwise the application is rejected for failure to furnish required documentation. Due in part to this requirement, Yahawi ultimately filed two disability pension applications.

---

[1] The Annuity Starting Date is ordinarily the first date for which benefits become payable under the plan.

Yahawi's first application for disability pension benefits
was ultimately rejected for failure to furnish required
documentation in that Yahawi did not provide the Trust with the
Disability Notice before the 180-day deadline. But before this
application was rejected on this ground, the Trust denied
Yahawi's requested Annuity Starting Date of September 1, 2017.
Yahawi appealed, and the Trust denied Yahawi's appeal of this
Annuity Starting Date decision on the merits.[2]

On March 21, 2018, Yahawi submitted a second application
for disability pension benefits, which was ultimately approved.
This time Yahawi submitted the Disability Notice before the 180-
day deadline.[3] In approving the application, the Trust granted
Yahawi a pension of $1,323.29 a month, with an Annuity Starting
Date of May 1, 2018.

After Yahawi's second application was approved, he and his
attorney sent letters to the Trust disputing the Annuity
Starting Date and the amount of the benefits. But neither letter
expressly asked the Trust to begin the administrative review
process for the May 1, 2018, Annuity Starting Date decision or
the amount of benefits decision. The Trust responded to the

---

[2] The Trust explained that according to the Plan's language, the Annuity
Starting Date, if the 2017 application were approved, would be November 1,
2017—the first day of the second month after the month in which the
application was submitted.

[3] The Disability Notice, which was dated July 21, 2018, found that Yahawi
became disabled on November 16, 2015, and was entitled to Social Security
disability benefits beginning May 2016.

letters by pointing out that the question of the Annuity
Starting Date was decided in the 2017 appeal but advising that
Yahawi had the right to appeal the calculation of the pension
benefits. The Trust also sent Yahawi a letter detailing the
calculation of the pension benefits and notifying him of his
right to appeal. Yahawi did not file a formal appeal or
otherwise respond to these letters from the Trust.

Now, Yahawi seeks to obtain pre-amendment disability
pension benefits, a greater amount of disability pension
benefits, and equitable relief for the termination of his health
insurance benefits. To that end, he brings an action under
ERISA's private cause of action provision, 29 U.S.C.
§ 1132(a)(1)(B), asserting three counts: (1) improper
determination of his pension benefits starting date,
(2) improper calculation of his pension benefits, and
(3) improper termination of his health insurance benefits.

## III. Legal Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Anderson, 477 U.S. at
248.

   The Court views the facts in the light most favorable to
the nonmoving party. "After making all reasonable inferences in
the nonmoving party's favor, there is a genuine issue of
material fact if a reasonable jury could find for the nonmoving
party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265,
268 (3d Cir. 2010). While the moving party bears the initial
burden of showing the absence of a genuine issue of material
fact, meeting this obligation shifts the burden to the nonmoving
party who must "set forth specific facts showing that there is a
genuine issue for trial." Anderson, 477 U.S. at 250 (quoting
Fed. R. Civ. P. 56).

## IV. Discussion

   Yahawi does not contest that summary judgment is
appropriate as to count three, the health insurance claim.
Yahawi failed to exhaust administrative remedies as to count
two, the amount of benefits claim. And Yahawi fails to raise a
genuine dispute of material fact as to count one, the benefits
starting date claim.

A.    **Abandoned Claim (Count Three)**

As to the third count, Yahawi did not respond to the motion for summary judgment insofar as it contested the health insurance coverage claim.

This claim alleges that Yahawi lost his health insurance benefits when he became disabled, that the Trust could have extended these benefits, and that its decision to not extend the benefits was arbitrary and capricious. The Trust asserts in the motion for summary judgment that Yahawi sued the incorrect entity for this claim because, according to the Trust Agreement and an affidavit, the Trust does not manage a health insurance plan. In the response to the motion for summary judgment, Yahawi did not answer this assertion.

Where a party "fails to properly address another party's assertion of fact . . . the court may," among other things, "consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, it is considered undisputed that the Trust does not manage a health insurance plan and that Yahawi sued the wrong entity regarding the health insurance claim. See Sarin v. Magee, 333 F. Supp. 3d 475, 480 (E.D. Pa. 2018) ("[Plaintiff] has not contested that

6

testimony or brought forth contrary evidence, and so I accept

those facts as not in dispute under Rule 56(e).").

Therefore, summary judgment is granted on count three

because the Trust is not the entity against which Yahawi can

enforce a health insurance benefits plan.[4]

## B.    Exhaustion (Counts One and Two)

As to counts one and two, Yahawi exhausted administrative

remedies as to his claim for an earlier benefits starting date

but did not exhaust administrative remedies as to his claim for

a greater amount of benefits.

A plaintiff asserting "claims to enforce the terms of a

benefit plan" under ERISA must first exhaust administrative

remedies. D'Amico v. CBS Corp., 297 F.3d 287, 291 (3d Cir.

2002). This "exhaustion requirement is strictly enforced."

Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990).

This is so because the requirement advances judicial

administration goals: "to help reduce the number of frivolous

lawsuits under ERISA; to promote the consistent treatment of

claims for benefits; to provide a nonadversarial method of

---

[4] Alternatively, summary judgment is granted because this claim is abandoned. See Seals v. City of Lancaster, 553 F. Supp. 2d 427, 432-33 (E.D. Pa. 2008) ("Therefore, plaintiff's failure to mention these issues in her summary judgment response constitutes abandonment of those claims. Accordingly, the Court need not address the merits of defendants' arguments and the motion for summary judgment is granted as unopposed with regard to plaintiff's state law claims." (citations omitted)); see also Carroll v. Lancaster Cty., 301 F. Supp. 3d 486, 499 (E.D. Pa. 2018) (granting summary judgment on claims not addressed in the response to the motion for summary judgment).

claims settlement; and to minimize the costs of claims settlement for all concerned." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)).

Exhaustion of administrative remedies requires the pursuit of all available administrative remedies until the administrative review process is complete. Outside of the ERISA context, exhaustion of all administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). So too in the ERISA context: administrative remedies are not exhausted if the plaintiff "has not availed himself of all of the Plan's available review procedures." Bennett v. Prudential Ins. Co., 192 F. App'x 153, 156 (3d Cir. 2006) (non-precedential).[5] Indeed, the crux of the ERISA exhaustion doctrine—in accordance with the goals of the doctrine—is that the plan administrators must have "the opportunity to decide whether [the] claim to pension benefits was meritorious." Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186-87 (3d Cir. 1984). Thus, where the administrative

---

[5] See also Gardner v. Metro. Life Ins. Co., 8 F. Supp. 3d 677, 681 (E.D. Pa. 2014) ("It is undisputed that . . . plaintiffs are required to exhaust all their plan remedies before filing suit in federal court." (citing Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 280 (3d Cir. 2007))).

appeal is not "deemed denied"[6] by operation of the time limits in the plan, a plaintiff "satisf[ies] the exhaustion requirement [] by completing the appeal process under the benefit plan." Smith v. Prudential Ins. Co. of Am., 513 F. Supp. 2d 448, 455 (E.D. Pa. 2007) (citing Gritzer v. CBS, Inc., 275 F.3d 291 (3d Cir. 2002)).[7]

The exhaustion requirement is not met if the plaintiff fails to complete the administrative review process by abandoning the process. In Kimble v. Int'l Bhd. of Teamsters, the Fund's appeals process had two levels, the committee level and the board level, and the plaintiffs "initiated appeals . . . but abandoned the process before either appeals could be completed" by not pursuing the appeals beyond the committee level. 826 F. Supp. 945, 946-947 (E.D. Pa. 1993). The court held that the administrative remedies had not been exhausted because the plaintiffs abandoned the appeals process and thus did not pursue all available administrative remedies. Id. at 947; see Mallon v. Trover Sols. Inc., 613 F. App'x 142, 144-45 (3d Cir.

---

[6] Yahawi does not argue that the appeal was deemed denied. And even if he had made this argument, the time limit for the Trust to decide the calculation of benefits appeal would not have elapsed because it would be tolled pending Yahawi's response to the Trust's letters advising him that he had not filed an appeal. See Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 111 (2013) ("The plan's time for resolving an appeal can be tolled again if the participant fails to submit necessary information." (citing § 2560.503-1(i)(4)).

[7] See also Grumbine v. Teamsters Pension Tr. Fund, 638 F. Supp. 1284, 1287 (E.D. Pa. 1986) (holding that a plaintiff has not exhausted administrative remedies when "she still has internal Fund remedies available to her").

2015) (non-precedential) (holding that a plaintiff failed to exhaust administrative remedies where she knew "the steps necessary to perfect her claim under the plan" but failed to take these steps).[8]

And a claimant abandons the appeals process if she fails to clarify to the plan administrator that a prior letter is meant to be an appeal when the administrator expresses uncertainty about the purpose of the letter. In Powell v. A.T. & T. Commc'ns, Inc., the plaintiff's counsel sent a letter to the administrator disputing its decision, requesting information, and threatening to sue, and the administrator responded that it received the letter and would provide the information requested. 938 F.2d 823, 827 (7th Cir. 1991). The court held that the plaintiff had not exhausted administrative remedies in that "a more clear-cut request for administrative review" was required because "any uncertainty about the potential for commencing an administrative review regarding disability benefits could have been clarified by a quick note from [the plaintiff's] attorney to [the administrator]." Id.; accord Delong v. Teacher's Ins. & Annuity Ass'n, No. 99-cv-1384, 2000 WL 426193, at *5 (E.D. Pa. Mar. 29, 2000) ("[P]laintiff failed to provide all of the

---

[8] See also Ford v. Freemen, 388 F. Supp. 3d 692, 711 (N.D. Tex. 2019) ("[T]he fact remains that Plaintiff chose to 'stop[ ] pursuing his own claim to the funds,' and thus on the face of the Complaint it is clear that Plaintiff failed to exhaust his administrative remedies prior to filing suit." (second alteration in original)).

required documentation to process a claim. As a result,

defendant reasonably treated plaintiff's claim as abandoned.").[9]

## 1.   Benefits Starting Date (Count One)

Yahawi exhausted administrative remedies as to the benefits

starting date claim because the Trust issued a final decision on

the merits of this claim. After the Trust denied Yahawi's

requested September 1, 2017, benefits starting date for his

first application, he appealed. In denying that appeal, the

Trust decided that Yahawi's claim for earlier benefits lacked

merit.

It makes no difference that the Trust decided the issue in

the context of Yahawi's first, and not his second, application

because the claim was the same under both applications. The

claim seeks benefits starting before the October 2017 amendment

to the Plan. It is true that Yahawi presents different theories:

in his administrative appeal he argued that his benefits

starting date should be September 1, 2017, while now he argues

that his benefits starting date should be November 16, 2015, or

May 1, 2016. And the rationale behind his argument for an

earlier date may have evolved between his administrative appeal

and now. But raising a new theory has no consequence on the

---

[9] See also Smith v. Prudential Ins. Co. of Am., 513 F. Supp. 2d 448, 451, 455
(E.D. Pa. 2007) (suggesting that, where the trust responds to a plaintiff's
letter asking whether the letter was intended as an appeal, the appeal is not
perfected until the plaintiff confirms that the letter was indeed an appeal).

11

exhaustion analysis.[10] The Trust decided, after considering the

claim for an earlier benefits starting date, that Yahawi's

benefits starting date would be based on the Annuity Starting

Date, as determined by the date he submitted his application.

This is the relevant determination regardless of which

application is at issue. Thus, he exhausted administrative

remedies as to this claim.

Further, even if this claim were not exhausted, the

exhaustion requirement is excused because it would have been

futile to pursue administrative remedies. A failure to exhaust

administrative remedies may be excused in "limited

circumstances," including where the plaintiff makes a "clear and

positive showing of futility." Harrow v. Prudential Ins. Co. of

Am., 279 F.3d 244, 249 (3d Cir. 2002) (quotations omitted). In

determining futility, the Court considers "(1) whether plaintiff

diligently pursued administrative relief; (2) whether plaintiff

acted reasonably in seeking immediate judicial review under the

circumstances; (3) existence of a fixed policy denying benefits;

(4) failure of the insurance company to comply with its own

internal administrative procedures; and (5) testimony of plan

administrators that any administrative appeal was futile." Id.

at 250. Here, Yahawi makes this showing. He points to the

---

[10] See Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186 (3d Cir. 1984)
("Section 502(a) of ERISA does not require either issue or theory exhaustion;
it requires only claim exhaustion.").

Trust's admission of futility when, in its communications with
Yahawi, it informed Yahawi that all administrative remedies were
exhausted regarding this claim. Upon receiving these
communications, Yahawi acted reasonably in seeking judicial
review. And, before that, he diligently pursued administrative
relief regarding this claim.

Thus, as to the benefits starting date claim, Yahawi
exhausted administrative remedies or it would have been futile
for him to do so, and the Court will proceed to consider this
claim on the merits.

### 2. Calculation of Benefits (Count Two)

Yahawi did not exhaust administrative remedies as to the
calculation of benefits claim. The Trust never issued a decision
on the merits regarding the calculation of benefits. And the
calculation of benefits claim is separate and distinct from the
benefits starting date claim, so the former was not decided in
the appeal from the first application. Indeed, the benefits were
never calculated for the first application, and thus the Trust
did not have an opportunity to decide this claim during that
appeal.

After Yahawi's disability pension application was approved
and the benefits were calculated (i.e., the second application),
he and his attorney each sent a letter to the Trust. Neither
letter expressly asked for administrative review of the

13

calculation of benefits. Whether these letters actually

initiated the administrative review process is beside the point.

Assuming they did, the Trust responded to both letters, alerting

Yahawi that it did not understand him to be appealing the

calculation of benefits claim. At this point, like in Powell,

Yahawi or his lawyer should have communicated to the Trust that

the letters were indeed intended to commence administrative

review of the calculation of benefits determination. In fact, in

a follow-up letter to Yahawi, the Trust advised him of his right

to appeal the calculation of benefits, but Yahawi did not

respond to any of these letters.

Because he did not respond to the Trust's letters, he

abandoned administrative appeals. Like in Kimble, there were

administrative remedies available to Yahawi, which he failed to

exhaust. A simple written response confirming his request for

administrative review would have sufficed. But, after advising

Yahawi of his right to appeal and not receiving any further

communication from him, the Trust "reasonably treated

plaintiff's claim as abandoned." Delong v. Teacher's Ins. &

Annuity Ass'n, No. 99-cv-1384, 2000 WL 426193, at *5 (E.D. Pa.

Mar. 29, 2000).

And Yahawi fails to make a showing to excuse his failure to

exhaust administrative remedies as to the calculation of

benefits claim. The limited circumstances in which a failure to

14

exhaust administrative remedies will be excused include where

the plaintiff shows "that he was threatened with irreparable

harm, that resorting to administrative remedies would be futile,

or that he was refused meaningful access to the Plan's

administrative procedures." Brown v. Cont'l Baking Co., 891 F.

Supp. 238, 241 (E.D. Pa. 1995) (citing Tomczyscyn v. Teamsters,

Local 115 Health & Welfare Fund, 590 F. Supp. 211, 213 (E.D. Pa.

1984)). Yahawi does not advance any of these arguments as to the

calculation of benefits claim and does not meet the burden of

showing that his failure to exhaust should be excused. And the

letters from the Trust, notifying Yahawi of his right to

administratively appeal the calculation of benefits, weigh

against finding futility.[11]

   Thus, as to the calculation of benefits claim,

administrative remedies were not exhausted, there is no reason

to waive the requirement, and summary judgment will be granted.[12]

---

[11] See Kimble v. Int'l Bhd. of Teamsters, 826 F. Supp. 945, 947 (E.D. Pa. 1993) (holding that exhaustion of administrative remedies was not futile where the Fund sent the plaintiffs letters "describ[ing] the appeals process and specifically suggest[ing] to the [plaintiffs] that they should first exhaust their administrative remedies before seeking judicial review").
[12] Although the Court can exercise its discretion to stay the case pending Yahawi's administrative appeal of this claim, the Court will not stay the case because Yahawi does not ask for a stay and he presents no reason why he did not pursue administrative remedies on this claim when the Trust explicitly told him that administrative remedies were available. See D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002) ("The decision of whether to grant a stay is entirely within the District Court's discretion. . . . [The district court did not abuse its discretion] where the only justification offered by plaintiffs was an appeal to justice and judicial economy, and where none of the plaintiffs had ever attempted to convince Westinghouse administrators that he or she was entitled to [what they now claim].").

**C.   Merits (Count One)**

As to count one, regarding Yahawi's benefits starting date, as to which Yahawi had exhausted administrative remedies,[13] the claim lacks merit. This is so because the terms of the Plan are clear and provide that he is not entitled to an earlier benefits starting date. Yahawi all but concedes that he is not entitled to an earlier starting date under the terms of the Plan, and instead primarily relies on notions of equity.

Based on equity, Yahawi argues that it is unfair for the Trust to change the terms of the Plan after he worked for years in reliance on the pension he expected to receive. But he does not contest that the Trust properly amended the Plan in accordance with the Pension Protection Act of 2006, Pub. L. No. 109-280, § 202, 120 Stat. 780, 868. He just contends it is unfair that it did so. This equity argument, which asks the Court to disregard the law, lacks merit because "it is well established that '[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.'" I.N.S. v. Pangilinan, 486 U.S. 875, 883 (1988) (alteration in original) (quoting Hedges v. Dixon Cty., 150 U.S. 182, 192 (1893)).

Yahawi's other arguments also fail. Yahawi asserts that he is entitled to an earlier benefits starting date, but he does

---

[13] See supra Section IV.B.1.

16

not point to any evidence of entitlement to this based on the

Plan. Yahawi's only argument that does not rely solely on

notions of equity is based upon the pension analysis performed

by the Trust, which lists the date of disability entitlement.

But this date does not control the benefits starting date by the

plain language of the Plan—the Annuity Starting Date controls.[14]

And to the extent this argument amounts to a claim for relief

based on a misrepresentation, Yahawi does not properly advance

that claim, which would be a claim for breach of fiduciary

duty.[15] And Yahawi has not addressed the elements of a breach of

fiduciary duty claim, e.g., that the misrepresentation is

material, such that if this were the claim he was pursuing,

summary judgment would be granted against him on the merits.[16]

---

[14] The Annuity Starting Date does not control the benefits starting date for individuals that meet the grandfather provision, but it is undisputed that Yahawi does not meet the requirements for the grandfather provision. A beneficiary meets the grandfather provision if he worked at least 3,000 hours during the 36-month period ending on September 30, 2017, and (1) turned 55 years old with 35 pension credits before September 30, 2017, or (2) turned 58 years old and earned at least 30 pension credits before September 30, 2017. And it is undisputed that between 2014 and 2017, Yahawi had 2,218 hours of contributions and he had 11.75 pension credits when he stopped working. Thus, he did not meet the requirements of the grandfather provision.
[15] See CIGNA Corp. v. Amara, 563 U.S. 421, 435–36 (2011) ("Where does § 502(a)(1)(B) grant a court the power to change the terms of the plan as they previously existed? The statutory language speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them." (alteration in original) (citing 29 U.S.C. § 1132(a)(1)(B))); Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir. 2000) ("An employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment.").
[16] See Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001) ("[I]n order to make out a breach of fiduciary duty claim of the kind here asserted, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that

**V.    Conclusion**

The motion for summary judgment will be granted because undisputed facts defeat Yahawi's health care benefits claim, Yahawi failed to exhaust administrative remedies regarding his claim to entitlement to a greater benefits amount, and Yahawi's benefits starting date claim lacks merit.

An appropriate Order follows.

---

misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." (citations omitted)).